IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

BILL AUSTIN, *et al.*,       )
                   )
      Plaintiffs,     )
                   )
    v.             )    CIVIL CASE NO. 1:23-cv-184-ECM
                   )           [WO]
REGENCY REALTY, *et al.*,   )
                   )
      Defendants.   )

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

This case arises from a contract for the sale of real property in Daleville, Alabama.

In January 2023, Bill and Angie Austin (collectively "the Austins" or "the Plaintiffs"), both

residents of Colorado, purchased the property with the intent of benefitting from a 1031

tax exchange.[1]  After discovering termites in the building, the Austins filed the instant

action alleging breach of contract, misrepresentation, suppression, deceit, and conspiracy

against their real estate agent, the real estate agency, the property management company,

and the owner of the real estate agency and property management company.  Defendants

Regency Realty, Inc. ("Regency Realty"), Regency Management, Inc. ("Regency

Management"), Billy Cotter ("Cotter"), and Evelyn Hitch ("Hitch") (collectively "the

Defendants") filed a motion to dismiss. (Doc. 28).  After carefully reviewing the

---

[1] Based on the Plaintiffs' description in their complaint, a 1031 tax exchange is where a seller of real estate can ameliorate the tax consequences of a property sale if they invest in additional real estate pursuant to certain conditions, including that they hold the new property for at least two years. (Doc. 1 at 3).

Defendants' motion to dismiss, the Plaintiffs' response, and the Defendants' reply, the Court concludes that the motion is due to be GRANTED.

## II.  LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (alteration in original) (citation omitted).  The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  Conclusory allegations that are merely "conceivable" and fail to rise "above the speculative level" are insufficient to meet the plausibility standard. *Twombly*, 550 U.S. at 555–56.  This pleading standard "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678.  Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*

### III.  STATEMENT OF FACTS

The Austins are a couple from Colorado who sought to buy property in Alabama so they could benefit from a 1031 tax exchange.  To help negotiate on their behalf, the Austins entered into a buyer's agency agreement with Regency Realty and its agent, Evelyn Hitch.  The property the Austins sought to buy was managed by Regency Management.  The Austins allege that Cotter owns both Regency Realty and Regency Management.

During the course of their dealings, the Austins asked to walk through the property a number of times.  Each time, they allege, Hitch informed them that they could not walk through the property because Regency Management would not allow it.  The Austins allege that they requested to walk through the property on four occasions, including on the days of the roof inspection, the termite inspection, and the surveyor's inspection.  Despite being repeatedly denied the opportunity for a walk through, the Austins closed on the property.  The purchase agreement stated:

> NEITHER SELLER NOR ANY BROKER LICENSEE MAKES ANY REPRESENTATION OR WARRANTIES REGARDING CONDITION OF THE PROPERTY EXCEPT TO THE EXTENT EXPRESSLY SET FORTH HEREIN.  Buyer has the obligation to determine any all conditions of the Property material to Buyer's decision to purchase the Property, including, without limitation, . . . the presence of, or damage from, wood destroying insects . . . .

(Doc. 28-2 at 4).  The agreement then stated that the sale of the property was not contingent on inspection, and that the "Buyer agrees to accept the Property in 'AS IS' condition." *Id.* On the day of closing, a single termite report was presented to the Austins.

When the Austins took possession of the property, they allegedly found a "massive" termite infestation requiring significant repairs. (Doc. 1 at 5).  They allege that the

Defendants withheld a second termite report that would have conveyed the true extent of the damage. The Austins allege that if they choose to resell the home in less than two years, they will lose the value of their 1031 exchange.

The Austins bring five causes of action against the Defendants. First, they allege that the Defendants breached their duties under the buyer's agent contract (1) to disclose "all information pertinent to the purchase of the home to the buyers," knowledge "as to the state of repair of the home," and "all inspections of the home;" (2) to help the buyers access the property for inspection, and (3) "to not favor the sellers of the property in order to generate a sale over the buyers of the property." (*Id.*) Second, the Austins allege that the Defendants misrepresented material facts to the Austins: specifically, the fact that "there were available ways to permit the Austins to see the property" and the value of the home accounting for the termite infestation. (*Id.* at 6). Third, the Austins allege that the Defendants suppressed the true condition and value of the property, the Terminix termite inspection report, and their ability to allow the Austins to walk through the property. (*Id.* at 7). The Austins allege these same facts in their fourth claim for deceit. (*Id.* at 8–9). Finally, the Austins bring a claim of conspiracy to commit the alleged wrongful acts against the Defendants. (*Id.* at 9).

## IV. DISCUSSION

The Defendants argue that the Plaintiffs have failed to state a claim in their complaint.

**A. Count One: Breach of Contract**

The Austins allege in their breach of contract claim that Regency Realty, Cotter, and Hitch breached the "buyer's agent contract." (*Id.* at 5). Specifically, they allege that Regency Realty, Cotter, and Hitch breached their duties under that contract to disclose "all information pertinent to the purchase of the home to the buyers," knowledge "as to the state of repair of the home," and "all inspections of the home," to help the buyers access the property for inspection, and to "not favor the sellers of the property in order to generate a sale over the buyers of the property." (*Id.*).

Under Alabama law,[2] "to state a claim for breach of contract, a plaintiff must allege '(1) a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages.'" *Sweetwater Invs., LLC v. Sweetwater Apartments Loan LLC*, 2010 WL 4904673, at *3 (M.D. Ala. Nov. 24, 2010) (citing *Barrett v. RadjabiMougadam*, 39 So. 3d 95, 98 (Ala. 2009)). The Defendants argue that the Plaintiffs have failed to allege the second and third elements of a breach of contract

---

[2] "Federal courts sitting in diversity apply the substantive law of the state in which the case arose." *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 (11th Cir. 2010) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938)). Under Alabama law:

> contract claims are governed by the laws of the state where the contract was made, unless the contracting parties chose a particular state's laws to govern their agreement, *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991), and the substantive rights of tort claimants are determined according to the laws of the state where their alleged injuries occurred. *Fitts v. Minn. Mining & Mfg. Co.*, 581 So. 2d 819 (Ala. 1991)

*Vision Bank v. Lanza*, 2011 WL 5190847, at *3 (S.D. Ala. Nov. 1, 2011). The contracts do not contain a choice of law provision or indicate in which state the contract was formed. However, the Plaintiffs bring their claims under Alabama law, the contracts concerned the purchase of a home in Alabama, and the parties agree that Alabama law applies. The alleged injuries also resulted from the purchase of real property in Daleville, Alabama. *See Vision Bank v. 145, LLC*, 2011 WL 5289070, at *3 (S.D. Ala. Nov. 4, 2011). Thus, the Court applies Alabama law.

claim—the Austins' performance and Regency Realty, Cotter, and Hitch's nonperformance. (Doc. 28 at 3).  For the reasons stated below, the Court agrees with the Defendants.

The Defendants argue that the operative contract is the Exclusive Buyer Agency Agreement ("Agency Agreement") between the Austins, Hitch, and Regency Realty, a copy of which is attached to their motion.[3]  The Defendants also attach the "Purchase Agreement" for the home.[4]  These agreements, they contend, have no mention of the duties that the Plaintiffs allege were breached by the Defendants.  Instead, according to the Defendants, the Agency Agreement explicitly relieves the Defendants of these duties.  In support, the Defendants point to a provision in the Agency Agreement where the Austins acknowledged that "[Regency Realty or Hitch] ma[de] no representations whatsoever regarding the condition of [the property]," and instead the Austins had "the responsibility to determine . . . any and all conditions of the property material to the [Austins'] decision

---

[3] A motion to dismiss is usually decided based on the complaint itself, but an exception may apply when a "a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007) (first citing *Harris v. Ivax Corp.*, 182 F.3d 799, 802 n.2 (11th Cir. 1999); then citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368–69 (11th Cir. 1997)) (holding that a document attached to a motion to dismiss can be considered by a court and comports with notice pleading when it is referred to in the complaint, it is central to claim, and neither party challenges its authenticity).  Here, the Plaintiff "would ultimately have to offer a copy of the [Agency Agreement] to prevail under any conceivable theory of its case." *Id.* at 1285.  Accordingly, the contract is central to their claim, and it is referred to in their complaint. *See id.* Neither party disputes its authenticity. (*See generally* Doc. 28; Doc. 35; Doc. 36). Finally, its consideration comports with the requirements of notice pleading because it is attached to the motion to dismiss. *See Fin. Sec. Assur., Inc.*, 500 F.3d at 1285.

[4] The Plaintiffs' misrepresentation, suppression, and deceit claims arise from the purchase of the home pursuant to the Purchase Agreement. Thus, for the same reasons as the Agency Agreement, the Court will consider the Purchase Agreement as part of the pleadings.  Because Count One only alleges a breach of the "buyer's agent contract," the Court will consider only the Agency Agreement and not the Purchase Agreement in determining whether Count One was properly pleaded.

to buy the property." (Doc. 28-1 at 1).  The Austins' responsibilities also included paying for a "property condition inspection from a qualified residential inspector(s) chosen by [them]" and to make any offer to purchase contingent on the inspector's report. (*Id.*).  The Defendants also argue that the Plaintiffs failed to allege their own performance in their complaint.[5]

A complaint must "contain either direct or inferential allegations respecting all material elements of a cause of action." *Snow v. DirecTV, Inc.*, 450 F.3d 1314, 1320 (11th Cir. 2006).  Under Alabama law, a material element of a breach of contract claim is the Plaintiffs' performance.  The Austins do not allege anywhere in their complaint their own performance under the buyer's agent contract, and no facts are provided from which the Court can infer the Plaintiffs' performance. *Gulf Coast Min., LLC v. Tryall Omega, Inc.*, 2016 WL 344960, at *4 (M.D. Ala. Jan. 27, 2016) ("Since a plaintiff's performance is a required element for breach of contract and because [the defendant] fails to allege in plausible terms its performance, the breach-of-contract [counter-]claim is due to be dismissed.").[6]

The Defendants also argue that the Plaintiffs fail to adequately plead the Defendants' nonperformance. In support, they contend that this case is analogous to

---

[5] Before turning to the parties' arguments, the Court notes that the Agency Agreement does not indicate that Cotter, in his individual capacity, is a party to the contract.  "In Alabama, if a party is not a party to a contract, that party cannot be sued for breach of that contract." *Wilder v. Genie Healthcare, Inc.*, 2022 WL 2705241, at *3 (N.D. Ala. July 12, 2022) (citing *Roland v. Cooper*, 768 So. 2d 400, 404 (Ala. Civ. App. 2000)).  The Court does not discuss this issue because the Defendants do not raise it in their argument, and the claim is due to be dismissed on other grounds.

[6] The Court here, and elsewhere in the opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

*Rosenthal v. JRHBW Realty, Inc.*, 303 So. 3d 1172 (Ala. 2020). In *Rosenthal*, the plaintiff-buyer alleged that his real estate agent represented to him that any structural problems with the building had been fixed, when in fact they had not, and failed to disclose that the agent's recommended inspector was not a structural engineer. In affirming the dismissal of the plaintiff's breach of contract claim at summary judgment, the Alabama Supreme Court held in part that because the agency agreement contained language indicating that the real estate brokerage did not assume any responsibility to inspect the property, the agency agreement could not provide a basis for the plaintiff's breach of contract claim. *Id.* at 1188. Specifically, the agency agreement in *Rosenthal* imposed a duty on the buyer to inspect the property and acknowledged that the buyer would not rely on any statements made by the real estate agent regarding the property's condition. *Id.* at 1177.

While it is generally disfavored for courts to engage in contract interpretation at the motion to dismiss stage, courts may do so when the "terms at issue are unambiguous." *Old Town II, LLC v. Oppidan Holdings, LLC*, 2021 WL 2586813, at *12 (N.D. Ala. Mar. 8, 2021) (first citing *BioHealth Med. Lab., Inc. v. Cigna Health & Life Ins. Co.*, 706 F. App'x 521, 524 (11th Cir. 2017); then citing *Holland v. Benihana, Inc.*, 780 F. App'x 772 (11th Cir. 2019)). "As long as the contractual terms are clear and unambiguous, questions of their legal effect are questions of law." *Hall v. Env't Litig. Grp., P.C.*, 248 So. 3d 949, 958 (Ala. 2017) (citation omitted). For the reasons stated below, the Court finds that the relevant contractual terms are unambiguous and do not give rise to the duties that the Plaintiffs allege were breached by the Defendants.

Similar to *Rosenthal*, the Agency Agreement in this case specifies that Regency Realty "ma[de] no representations whatsoever regarding the condition of the property," and that the "[Austins], not [Regency Realty], ha[d] the responsibility to determine or verify either personally or through or with a licensed contractor or other representative of [their] choosing, any and all conditions of the property material to the [the Austins'] decision to buy the property." (Doc. 28-1 at 1).    Under Alabama rules of contract interpretation,

> [w]here there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.  If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.

*Once Upon a Time, LLC v. Chappelle Properties, LLC*, 209 So. 3d 1094, 1097 (Ala. 2016) (citation omitted).  According to the Agency Agreement's terms, neither Regency Realty nor its agents were responsible for verifying material conditions of the property, and the parties agreed that that Regency Realty and Hitch made no representations regarding the property's condition. (*See* doc. 28-1 at 1).  The contract unambiguously states that it was the Austins' responsibility to either verify themselves or through a contractor any material conditions of the property.  The Court also discerns no language in the Agency Agreement indicating that it was Regency Realty's or Hitch's responsibility to secure the Austins personal access to the property on the occasions alleged in the complaint.

The Austins contend that two terms in the Agency Agreement impose the alleged duties on the Defendants.  First, they point to a clause in the Agency Agreement which says that the "Broker will work at all times in the Client's best interest[.]" (Doc. 35 at 5).

The Austins argue that the "best interest" clause required Regency Realty and Hitch to disclose the termite report, their knowledge as to the state of repair of the home, and to secure the Austins a personal walkthrough of the property.  The Austins also point to a clause under the section titled "6. LIMITED CONSENSUAL DUAL AGENCY," which says that "the broker is required by law to disclose any latent structural defect or any other defect known to the broker." (Doc. 35 at 6).  The Austins contend that the Defendants' failure to report the termite infestation, to provide the second termite report, and to secure personal access to the property for the Austins on the occasions alleged were breaches of these duties.

The language the Austins point to, however, does not create these duties in light of the express exclusions of such duties elsewhere in the contract.  Whatever the duty to act in the buyer's "best interest" may entail, it is unambiguous that the Agency Agreement specifically relieves Regency Realty and its agents of any responsibility to verify "any and all conditions of the property material to [the Austins'] decision to buy the property." (Doc. 28-1 at 1).  Instead, under the terms of the contract, the Austins had the responsibility to verify these conditions either themselves or through hired inspectors.  Further, the Austins acknowledged in the contract that Regency Realty and Hitch made no representations as to the condition of the property.

Under Alabama's established rules of contract construction, "where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms." *Once Upon a Time, LLC v. Chappelle Props., LLC*, 209 So.

3d 1094, 1097 (Ala. 2016).  The Austins' claim rests on the Defendants' alleged failure to perform tasks which other contract provisions unambiguously excuse the Defendants from having to perform.  If the Court were to find that it was plausible for Regency Realty and Hitch to have breached the contract by not providing inspection reports, securing a personal walk through on the occasions alleged, or disclosing all knowledge as to the state of repair of the home, then the other provisions relieving the Defendants of responsibility for verifying property conditions and stating that they made no representations would be rendered meaningless.

The Plaintiffs' second argument also fails.  Under the section titled "LIMITED CONSENSUAL DUAL AGENCY," the contract states that the duty to disclose latent structural defects is only triggered when Regency Realty is acting as a dual agent, i.e., when the property "is listed with the Broker." (Doc. 28-1 at 2).  The Purchase Agreement states that "[t]he Listing Company is FOR SALE BY OWNER." (Doc. 28-2).  The box corresponding with the listing company being "[a]n agent of both the Seller and Buyer," therefore "acting as a limited consensual dual agent," is left unchecked. (*Id.*).  Accordingly, the Agency Agreement's section on dual agency is inapplicable.

The Austins also responded by attaching Regency Realty's Buyer's Acknowledgment Statement, (doc. 35-1), and Transaction Fee Agreement, (doc. 35-2), to their brief.  The Austins' complaint alleges that the Defendants breached the "buyer's agent contract."  The buyer's agent contract was introduced by the Defendants as the "Agency Agreement," whose authenticity the Austins do not contest.  While it is not entirely clear to the Court at this stage whether these two additional agreements are part of the "buyer's

11

agent contract," the Court will consider these two agreements as part of the "buyer's agent contract" for argument's sake.[7]

The Austins point to two provisions in these agreements that they say "make clear that the brokers offer and may even charge for the services of obtaining the termite report." (Doc. 35 at 8).  First, the Buyer's Acknowledgment Statement contains a clause which says: "One of the many services provided by your Agent is providing the names of certain professional   vendors . . . .   Names   of   several   such   vendors   as . . . termite companies . . . may  be  given  to  you  by  your  Agent." (Doc. 35-1  at  1).   Second,  the Transaction Fee Agreement had the Austins acknowledge:

> that there shall be a $25.00 transaction fee . . . which shall be paid to CENTURY 21 Regency Realty, Inc. . . . the fee is used to assist with the costs related to the brokerage's closing coordinator who assists with each transaction. The coordinator reviews all files, stays in contact with the mortgage companies for updates during the loan process, orders home warranties, wood infestation reports, . . . [etc.].

(Doc. 35-2 at 1).  Neither provision, considered separately or together, creates a duty for Regency Realty or Hitch to disclose all termite reports.  The first provision indicates that Regency Realty will provide the names of termite companies for the Austins to use, and the second provision simply states that the transaction fee goes to the closing coordinator, who can order wood infestation reports.  There is no language creating a duty for Regency Realty or Hitch to disclose all termite reports to the Austins.

---

[7] The Defendants do not contest the authenticity of these additional agreements, and the Agency Agreement is not clear as to whether it contains or incorporates these two agreements.

Taken together, the express terms of the Plaintiffs' contract with the Defendants render their claim implausible. The Austins' claim for breach of contract against the Defendants is due to be DISMISSED.

### B. Counts Two through Four: Misrepresentation, Suppression, and Deceit

The Defendants argue that the Austins' fraud claims fail because the Austins, as a matter of law, cannot establish reasonable reliance on the representations they allege in their complaint. Specifically, the Defendants argue that under Alabama law, an "as is" clause in a purchase agreement forecloses all fraud claims against a seller or the real estate agent. The Defendants also contend that the Plaintiffs failed to plead their fraud claims with the heightened degree of particularity required under Fed. R. Civ. P. 9(b).[8] Finally, the Defendants argue that a clause in the Purchase Agreement releases them from any claims arising from the sale of the house.

The Court first addresses which standard is appropriate to evaluate the Austins' claims of misrepresentation, suppression, and deceit. Under Rule 9(b), a claim for fraud must set forth:

> (1) precisely what statements were made in what documents or oral representations or what omissions were made, and
> (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) [the] same, and
> (3) the content of such statements and the manner in which they misled the plaintiff, and
> (4) what the defendants obtained as a consequence of the fraud.

---

[8] The Plaintiffs do not address in their briefs whether Rule 9(b) should apply to their fraud claims.

*Rugged Portable Computers, LLC v. KPaul Props., LLC*, 2017 WL 7201527 at *1 (N.D. Ala. June 1, 2017) (citing *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir. 1997)).  Because the claims here sound in fraud, the Court will examine the Plaintiffs' complaint under Rule 9(b)'s heightened pleading standard for fraud claims. *See Lovell v. Selene Fin., L.P.*, 2018 WL 1609635, at *4 (N.D. Ala. Apr. 3, 2018) ("Rule 9(b), by its plain language, requires a plaintiff to plead with particularity fraud or mistake . . . . As a result, the court holds that a plaintiff raising a misrepresentation claim under Alabama law must plead it with particularity.").

"To assert a viable fraud claim for misrepresentation, [the Austins] must allege facts showing a false representation of a material fact [that] they reasonably relied upon and damage as a result of the misrepresentation." *Wiggins v. FDIC*, 2017 WL 659928 (N.D. Ala. Feb. 14, 2017) (citing *Mantiply v. Mantiply*, 951 So. 2d 638, 653 (Ala. 2006)).  The Austins focus on two misrepresentations allegedly made by the Defendants.  First, the Austins allege that Hitch misrepresented that Regency Management would not allow the Austins to walk through the property on the alleged occasions, when in fact Regency Management would have allowed it.  Second, they allege that Regency Realty, Hitch, and Cotter misrepresented the value of the home to maximize their commission from the sale. The Austins allege that these misrepresentations "violated their duties to Plaintiffs." (Doc. 1 at 6).  The Austins also allege that they were damaged by these misrepresentations because of the resulting costs of repair, the risk of losing the value of their 1301 transaction, and the difference between the true property value and the price they paid for the home. (*Id.*).

14

The Austins, however, fail to state a claim for misrepresentation because they do not plausibly allege that they reasonably relied on the alleged misrepresentations in purchasing the home—a material element of a claim for misrepresentation. *McCall v. Bank of Am., N.A.*, 2017 WL 2589580, at *3 (M.D. Ala. June 14, 2017) (citing *Billy Barnes Enterprises, Inc. v. Williams*, 982 So. 2d 494, 499 (Ala. 2007)) ("Plaintiff fails to even mention how she relied on alleged misrepresentations by [the defendant].  Reliance is a required element of any fraud claim. As a result, plaintiff's [complaint] does not contain sufficient facts necessary to state a plausible cause of action for fraud.").  The Austins' first allegation of misrepresentation concerns Hitch's alleged repeated statements that Regency Management refused to permit a walkthrough.  The Austins' second allegation is that the Defendants misrepresented the value of the home to the Austins.  "Reliance requires that the misrepresentation actually induced the injured party to change its course." *Id.* at *2 (citing *Hunt Petroleum Corp. v. State*, 901 So. 2d 1, 4 (Ala. 2004)).  Nowhere do the Austins allege that they relied on the Defendants' statements in purchasing the home or how the misrepresentations caused them to change their course of action. *Id.* ("By failing to provide facts that allege how [the plaintiff] relied on misrepresentations by [the defendant], [p]laintiff has not sufficiently stated a claim for fraud under Alabama law.").  Further, the Austins do not allege the manner in which the statements misled the Plaintiffs, as required by Rule 9(b).

Alabama law also precludes the Austins from bringing a claim for fraud against their agent because they signed a purchase agreement with an "as is" clause.  Under Alabama

law, the rule of *caveat emptor* still applies to the sale of used[9] real estate. *ERA Class.Com, Inc. v. Stoddard*, 987 So. 2d 1130, 1133 (Ala. Civ. App. 2007) (citing *Blaylock v. Cary*, 709 So. 2d 1128, 1130 (Ala. 1997); *Ray v. Montgomery*, 399 So. 2d 230, 233 (Ala. 1980)). Under *caveat emptor*, "it is solely the buyers' responsibility to determine the condition of the property, and the seller and real estate agents involved in the transaction have no duty to disclose any defects." *Seong Ho Hwang v. Gladden*, 2020 WL 521849, at *5 (M.D. Ala. Jan. 31, 2020) (first citing *Blaylock*, 709 So. 2d at 1130; then citing *Cato v. Lowder Realty Co.*, 630 So. 2d 378, 382 (Ala. 1993)). "Thus, in the sale of used real estate, a seller or the seller's agent generally has no duty to disclose to the purchaser any defects in the property." *ERA Class.Com, Inc.*, 987 So. 2d at 1133 (Ala. Civ. App. 2007) (first citing *Blaylock*, 709 So. 2d at 1130; then citing *Cato*, 630 So. 2d at 382). But, as the Austins note in their opposition to the motion, there are exceptions to this rule. Generally,

> if the agent (whether of the buyer or of the seller) [or the seller] has knowledge of a material defect or condition that affects health or safety and the defect is not known to or readily observable by the buyer, the agent [or seller] is under a duty to disclose the defect and is liable for damages caused by nondisclosure.

*ERA Class.Com, Inc.*, 987 So. 2d at 1133 (citing *Fennell Realty Co. v. Martin*, 529 So. 2d 1003, 1005 (Ala. 1988)) (alterations in original).

However, this exception to *caveat emptor* does not apply "when property is purchased subject to an 'as is' clause in the purchase contract," because an "as is" clause "negates the element of reliance essential to any claim of fraud and/or fraudulent

---

[9] The Plaintiffs do not dispute that the property was used.

suppression." *Seong Ho Hwang*, 2020 WL 521849, at *5–6 (first citing *Clay Kilgore Constr.*, 949 So. 2d at 897–98; then citing *Teer v. Johnston*, 60 So. 3d 253, 258–61 (Ala. 2010)).  "Use of 'as is' language in a contract effectively places the burden on the buyer to confirm the suitability of the property; after all, it is the buyer who initiates the offer to purchase." *Kidd v. Benson*, 321 So. 3d 676, 681 (Ala. 2020).  Even "[w]here a purchaser's direct inquiry would otherwise impose a duty of truthful disclosure, [the Alabama Supreme Court] has held that a purchaser's fraud claim is precluded by language in a sales contract stating that the purchase is 'as is.'" *Benton v. Clegg Land Co.*, 99 So. 3d 872, 880 (Ala. Civ. App. 2012) (citing *Leatherwood, Inc. v. Baker*, 619 So. 2d 1273, 1274 (Ala. 1992); *Haygood v. Burl Pounders Realty, Inc.*, 571 So. 2d 1086, 1089 (Ala. 1990); *Massey v. Weeks Realty Co.*, 511 So. 2d 171, 173 (Ala. 1987)).  This doctrine applies even where the fraud claims are against a buyer's own real estate agent. *Seong Ho Hwang*, No. 3:16-CV-502-SMD, 2020 WL 521849, at *6 ("[B]ecause an 'as is' clause negates the buyer's reliance on any representations concerning the property, it applies equally to all real estate agents involved in the transaction.").

Here, the Austins purchased the property "as is."  Specifically, the Purchase Agreement checks the box labeled "SALE OF PROPERTY NOT CONTINGENT UPON INSPECTION," and says that the "Buyer agrees to accept the Property in 'AS IS' condition." (Doc. 28-2 at 4).  Further, the Purchase Agreement states that "Buyer will not rely and has not relied on any statements or omissions made by any Broker/Licensee regarding the condition of the property." (*Id.*).  In Paragraph 30, the Purchase Agreement also states that neither the "Broker, nor any sales associate shall be bound by any

. . . representation concerning the property, express or implied, not specified herein." (*Id.* at 7).  The Defendants argue that the contract terms make any reliance by the Austins on the Defendants' actions or statements unreasonable as a matter of law.  The Austins contend that their claims are not subject to this doctrine, because the alleged misrepresentations do not "address in any way the condition of the property or its suitability for the Austins' purposes." (Doc. 35 at 10).  Instead, they argue, their fraud claims address "the [D]efendants' actions and statements to hide from the Austins' [sic] the information the Defendants possessed that might defeat the sale of the property." (*Id.* at 11).

The Court is not persuaded by the Plaintiffs' argument.  The alleged overstated value of the property due to termites and the ability to inspect the home plainly concern the condition of the property and its suitability for the Austins, despite their attempt to characterize them as something else.  The "as is" clause in the Purchase Agreement states explicitly that the Austins' purchase was not contingent on a home inspection.  According to their Purchase Agreement, the Austins also acknowledged that they did not rely on the representations of their agent in purchasing the property.  Further, the Purchase Agreement stated that the broker would not "be bound by any representation concerning the property, express or implied, not specified herein." (Doc. 28-2 at 7).  This language is not limited to representations of physical conditions but instead covers *any* representations concerning the property.

The case law also does not support a distinction between the misrepresentations alleged by the Austins and the misrepresentation claims previously held to be barred by an "as is" clause under Alabama law. *See e.g.*, *ERA Class.Com, Inc.*, 987 So. 2d at 1136

18

(rejecting the argument that the plaintiffs' claims were not barred by an "as is" clause because they concerned the suppression of property zoning rather than its physical condition).  In *Massey*, the court held that the buyer did not have the right to rely on the representations of the real estate agent about the existence of termites after signing an "as is" clause. 511 So. 2d at 173.  In *Leatherwood*, an "as is" clause precluded a fraud claim against a real estate agent who represented that a house did not have structural problems, when in fact it did, and their agency was found to have documents evidencing the structural problems which they did not share with the buyers. 619 So. 2d at 1274.  In *Haygood*, the court stated in dicta that even if the buyers of a home with basement-leakage problems had properly alleged reliance on the real estate agency's statements, their claims would still be barred because they signed statements indicating "no reliance," where the buyers alleged the home's value and condition was misrepresented by their agents. 571 So. 2d 1086.  In *Shelby Resources, Inc. v. J.P. Morgan Chase National Corporate Services, Inc.*, the court held that an "as is" clause barred the buyers' claims against the sellers for mold contamination in the home, even when the sellers had letters confirming the presence of mold and its resulting health issues, which they did not disclose. 2008 WL 11424155, at *1 (N.D. Ala. May 28, 2008).

"[A]n 'as is' clause serves as a clear and common disclaimer of any previous representations." *Teer*, 60 So. 3d at 261.  The Austins' fraud claims stem from the alleged suppression of a second termite report, the low value of the home due to termites, and the inability to walk through the property on the alleged occasions.  The Austins purchased the house "as is," with clauses explicitly disclaiming any contingency on inspection or reliance

on their agent's representations, despite being told on four occasions that they could not personally walk through the property.  Ms. Austin, as alleged in the complaint, is also a real estate agent herself.  No facts are alleged that would allow the court to infer that the Austins did not knowingly and willingly enter into this agreement.  As a matter of law, their reliance on any representation made by Hitch or Regency Realty was not reasonable.

The Austins' suppression and deceit claims are both subject to the same doctrines as described above. *Shelby Res., Inc.*, 2008 WL 11424155, at *4 ("The duty to disclose, as relevant to both [p]laintiff's suppression and deceit claims, is subject to two principles of Alabama law concerning the sale of used properties: the effect of 'as-is' contracts and the doctrine of caveat emptor.").   A prima facie case of suppression under Ala. Code § 6-5-102 consists of the following elements:

> (1) the defendant had a duty to disclose a material fact; (2) the defendant concealed or failed to disclose this material fact; (3) the defendant's concealment or failure to disclose this material fact induced the plaintiff to act or to refrain from acting; (4) the plaintiff suffered actual damage as a proximate result; and (5) the defendant had actual knowledge of the material fact allegedly suppressed.

*Shelby Res., Inc.*, 2008 WL 11424155, at *3 (citing *State Farm Fire & Casualty Co. v. Owen*, 729 So. 2d 834, 837 (Ala. 1998)).  "To state a claim for deceit, the plaintiff must [allege] that the defendant willfully or recklessly misrepresented or suppressed material facts with the intent to mislead." *Huntsville Golf Dev., Inc. v. Est. of Brindley*, 2015 WL 5693608, at *9 (N.D. Ala. 2015) (citing *Hughes v. Hertz Corp.*, 670 So. 2d 882, 888 (Ala. 1995)).  A deceit claim under Ala. Code § 6-5-104 "raises the required mental state from statements 'made by mistake' to those made 'willfully.'" *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1246 (N.D. Ala. 2019).

20

The Austins allege in their complaint that the Defendants suppressed the second, more detailed, termite inspection report, that the Defendants had "legal and physical access to the property so that they could have allowed the Austins to access the property," and that the value of the home was overstated. (Doc. 1 at 8).  The Austins allege the same facts in support of their claim for deceit.  As with their claim for misrepresentation, the Austins fail to plausibly allege the manner in which they were induced to act in reliance on any omissions. *McCall*, 2017 WL 2589580, at *3.

The claims for suppression and deceit are also barred by the "as is" clause in the Purchase Agreement.  Both suppression and deceit require the Plaintiff to establish reasonable reliance. *Hurry v. Gen. Motors LLC*, 622 F. Supp. 3d 1132, 1153 (M.D. Ala. 2022) (citing *Johnson v. Sorensen*, 914 So. 2d 830, 837 (Ala. 2005) ("[A] plaintiff's ['reasonable reliance'] is an essential element of a suppression claim."); *Roche Diagnostics Corp. v. Priority Healthcare Corp.*, 407 F. Supp. 3d 1216, 1246 (N.D. Ala. 2019) (considering the plaintiffs' claims of fraud and deceit together in determining the plaintiffs' reasonable reliance because of the "practical equivalence" of each claim.).  Under Alabama law, "an 'as is' clause negates the element of reliance essential to any claim of fraud and/or fraudulent suppression" and consequently bars any suppression and deceit claims. *ERA Class.Com, Inc.*, 987 So. 2d at 1136 (citing *Haygood*, 571 So. 2d at 1089; *Massey*, 511 So. 2d at 173; and *Gaulden v. Mitchell*, 849 So. 2d 192, 199 (Ala. Civ. App. 2002)).

For the same reasons as the misrepresentation claim, the Austins' claims of suppression and deceit are barred by the Purchase Agreement's "as is" clause, the acknowledgment that they did not rely on the Defendants' representations, and the

statement that the Defendants were not bound by any previous representations concerning the property.  The Austins also expressly chose to not make their purchase contingent on an inspection.  Any reliance on the omission of a second termite report, an overstated home value, or the Defendants' legal or physical access to the property on the occasions alleged is unreasonable as a matter of law.  A "buyer is not without recourse in preserving the viability of previous representations by simply negotiating for the inclusion of such representations in the deed or contract for sale." *Teer*, 60 So. 3d at 261.  Instead of preserving their fraud claims in the Purchase Agreement, the Austins expressly disclaimed them.

The Austins failed to plausibly plead reasonable reliance in their claims for misrepresentation, suppression, and deceit.  Additionally, the Austins' fraud claims are barred as a matter of law by the "as is" clause in their Purchase Agreement, the statements indicating that the brokers were not bound by any previous representations, and the acknowledgement that the Austins did not rely on any representations by the broker.  Accordingly, the Austins' claims for misrepresentation, suppression, and deceit against the Regency Realty, Hitch, and Cotter are due to be DISMISSED. [10]

### C. Conspiracy

The Plaintiffs allege that the Defendants conspired to commit the underlying wrongs pleaded in their other claims.  "Conspiracy is not an independent cause of action" and must

---

[10] Because the Court finds that the claims are due to be dismissed for the reasons stated, the Court pretermits discussion of the Purchase Agreement's general release.

have an underlying claim. *Freeman v. Holyfield*, 179 So. 3d 101, 106 (Ala. 2015) (citing

*Drill Parts & Serv. Co. v. Joy Mfg. Co.*, 619 So. 2d 1280, 1290 (Ala. 1993)).  As explained

above, the underlying claims against the Defendants are due to be dismissed.

Consequently, the "conspiracy claim, being dependent on [the dismissed] claim[s]," fails.

*See id.*  The Plaintiffs' claim for conspiracy is due to be DISMISSED.

## V.  CONCLUSION

Accordingly, and for good cause, it is

ORDERED that the Defendants' Motion to Dismiss (doc. 28) is GRANTED, and

the Plaintiffs' claims are DISMISSED with prejudice.

A separate Final Judgment will enter.

Done this 5th day of January, 2024.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE